UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AARON A. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:08-CV-170 CAN |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | |
| Defendant. | |

**OPINION AND ORDER**

On April 4, 2008, Plaintiff, Aaron A. Smith ("Smith"), filed his complaint in this Court. On July 25, 2008, Smith filed an opening brief and he asks this Court to enter judgment in his favor or to remand this matter to the Commissioner. On October, 1 2008, Defendant, Social Security Administration ("SSA"), filed its response brief. On October 15, 2008, Smith filed his reply brief. This Court now enters its ruling based upon the record of this case that includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

**I.    PROCEDURE**

On December 28, 2004, Smith filed his application for a period of disability and disability insurance benefits. (Tr. 13). Smith is insured for disability insurance benefits through June 30, 2009. (Tr. 15). Smith claims he is entitled to benefits pursuant to Title II and XVI of the Social Security Act. See 42 U.S.C. §§ 416(i), 423.

On March 7, 2007, Smith appeared at a hearing before an Administrative Law Judge (ALJ) who issued a denial of Smith's claim. (Tr. 13-20). The ALJ found that Smith had not been under a disability. (Tr. 20). In reaching this conclusion the ALJ made the following determinations: that

Smith had not engaged in substantial gainful activity since September 2, 2003 (Tr. 15); that Smith had spinal degenerative disc disease[1] (Tr. 15); that Smith did not have an impairment, or combination thereof, that met or equaled one of the listed impairments in 20 C.F.R. Part 404 (Tr. 17); that Smith had the residual functional capacity to perform the full range of light work (Tr. 17); and that Smith was capable of performing past relevant work as a carpenter/labor supervisor or bartender (Tr. 19).

Smith appealed the ALJ's decision to the Appeals Council. (Tr. 4). The Appeals Council denied review and, as a result, the ALJ's decision became the Commissioner's final decision. (Tr. 4). 20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, on April 4, 2008, Smith filed a complaint in this Court seeking a review of the ALJ's decision. This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**II.    ANALYSIS**

    A.    Facts

Smith is 38 years old. (Tr. 15). He has an eleventh grade education, is divorced and has two children. (Tr. 63, 103, 152). He is a framer by profession. (Tr. 437). He claims to be suffering from degenerative disc disease, bipolar disorder, episodic left facial palsy, and suicidal tendencies which prevent him from working. (Tr. 15-16).

---

[1] Degenerative disc disease is described by Smith to mean, "the natural changes in a person's spinal discs...as he or she ages. It can result in back or neck pain" and may be initiated by a sudden fall or injury. See Doc. No. 13 at 4 (citing WebMD, www.webmd.com/back-pain/tc/degenerative-disc-disease-topic-overview).

2

Smith has had a history of back, buttock and leg pain, dating back to 1999. (Tr. 355, 363). At some point between 1999 and 2003, Smith developed spondylolisthesis.[2] (Tr. 354). This condition was aggravated by a motor vehicle accident that Smith suffered on January 12, 2003. (Tr. 254). Smith arranged to have corrective back surgery performed by Dr. Henry DeLeeuw, an orthopedic surgeon, on September 2, 2003. However, that surgery was unsuccessful due to the misplacement of a screw into one of Smith's discs. (Tr. 255, 363-368). To correct Dr. DeLeeuw's error, Smith subsequently received a second operation from orthopedic specialist Dr. Michael J. Hartman, on April 26, 2006. (Tr. 195).

Though he is primarily a framer, Smith worked periodically as a bartender during the years 1995-1997, at one stretch working fourteen consecutive months in that position. (Tr. 99, 77). In addition, in 2003, Smith worked in an unpaid position as a disc jockey intern and performed some light-duty carpentry. (Tr. 160, 165, 338). Finally, in 2006, he worked twice as a light-duty carpenter for a period of two months each, and as a framer at various companies between 1998 and 2003. (Tr. 160, 165).

    a.    <u>Dr. DeLeeuw</u>

After Smith's car accident, Dr. Henry DeLeeuw commented that Smith's pain was "worse with activity and improved with rest" and determined that back surgery was necessary. (Tr. 355). After the surgery, in September 2003, Smith routinely visited Dr. DeLeeuw who reported that Smith was "doing fine." (Tr. 358). Mutiple MRIs of Smith's back led Dr. DeLeeuw to conclude that the

---

[2] Spondylolisthesis is the forward slippage of one vertebra (bone) onto another. STEDMAN'S MEDICAL DICTIONARY 1678 (27th ed. 2000).

3

"fusion [in Smith's back] [was] solid" and that Smith was "doing great," clearing him to go back to work without restrictions. (Tr. 356).

  b. Dr. Hartman

Still feeling pain after Dr. DeLeeuw's surgery, Smith consulted with Dr. Michael J. Hartman who believed that a second surgery was necessary to remedy Dr. DeLeeuw's errant placement of a screw in Smith's disc. (Tr. 188). Characterizing Dr. DeLeeuw's surgery as "failed," Dr. Hartman noted that a screw was "in the disc instead of the vertebra and [that] the disc [was] crushed because of this." (Tr. 255). Smith described the pain as if "there [was] a baseball bat being pushed into his spine." (Tr. 195). In December 2004, Dr. Hartman opined that Smith would "never be able to return to work as a framer" and that he may be able to return to "a sedentary type of job." (Tr. 207). In April 2006, Dr. Hartman corrected the earlier, flawed surgery by placing screws and metal rods into Smith's back. (Tr. 262-63).

  B. Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C. § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhardt, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an

adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). However, an ALJ's legal conclusions are reviewed de novo. Haynes, 416 F.3d at 626.

    C.        Smith's Motion for Summary Judgment or Remand

To be entitled to benefits under 42 U.S.C. § 423, 1321a, Smith must establish that she was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: 1) the claimant is presently employed; 2) the claimant has a severe impairment or combination of impairments; 3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; 4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and 5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; Briscoe, 425 F.3d at 352. If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R.§§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional capacity, which in turn is used to determine whether the claimant can perform his past work under step four and

5

whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but he burden shifts to the Commissioner at sept five. Id.

　　1.　　The ALJ's Decision to Not Give Dr. Hartman's Opinion Controlling Weight Is Supported by Substantial Evidence.

Smith contends that the ALJ improperly rejected the opinion of his treating physician because the ALJ cited no evidence which undermined Dr. Hartman's opinion of Smith's work ability. An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006). "This rule. . . seems to take back with one hand what it gives with the other, and as a result, to provide little in the way of guidance to either." Id. More weight is generally given to the opinion of a treating physician because he is more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 404.1527(d)(2); Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000). However, a claimant is not entitled to benefits merely because a treating physician labels him as disabled. Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001). Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. Clifford, 227 F.3d at 870. When evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one more piece of evidence for the ALJ to weigh. Hofslien, 439 F.3d at 377 (citations omitted). Smith argues that his treating physician should have been given controlling weight.

　　　　a.　　Dr. Hartman's Opinion

The ALJ did not give the opinion of Dr. Hartman, a treating physician, controlling weight because he reasoned that it was inconsistent with other parts of the record. (Tr. 19). Consistent with Dr. Hartman's opinion, the ALJ found that Smith was severely musculoskeletally impaired. Id. However, the ALJ rejected Dr. Hartman's opinion that Smith might only be able to return to a sedentary type of job as "conclusory and unsupported." Id. The ALJ based this finding upon internal inconsistencies in Dr. Hartman's opinions and the contrary, independent opinions of Smith by the State agency medical consultant indicating that Smith could perform a full range of light work. Id.

In support, Smith argues that the ALJ "cited no evidence that undermines Dr. Hartman's opinion." However, this Court finds Smith's argument to be without merit. In particular, the ALJ noted in his opinion that Dr. Hartman opined that Smith would only be able to return to sedentary work. (Tr. 19). However, the ALJ also noted that Dr. Hartman had also told Smith that "everything look[ed] good" and that Smith should "continue to improve." Id. Further, the ALJ also noted that Smith had returned to work as a framer on two separate occasions in 2006. (Tr. 19). The ALJ noted that this evidence was contradictory to Dr. Hartman's other prediction that Smith would never be able to work as a framer again, stating "[t]he claimant did in fact return to work." Id. As such, the ALJ concluded that Dr. Hartman's medical opinion was conclusory and unsupported and the ALJ chose to give greater weight to the opinion of the State agency medical consultant.

Because the ALJ adequately articulated his reasons for not affording Dr. Hartman's opinion controlling weight, citing inconsistencies in the record testimony, this Court concludes that the ALJ's opinion was substantially supported. See Clifford, 227 F.3d at 870 ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record.").

7

Accordingly, the ALJ was within his discretion to afford greater weight to the opinion of the State agency medical consultant. See Hofslien, 439 F.3d at 377 ("When evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one more piece of evidence for the ALJ to weigh.").

Smith additionally argues that the ALJ "picked and chose" only the evidence that supported the his conclusion; thereby, mischaracterizing and ignoring substantial evidence in the record. See Diaz v. Chater, 55 F.3d 300, 307-08 (7th Cir. 1995) ("An ALJ may not select and discuss only that evidence that favors his ultimate conclusion."); Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001) (the ALJ must evaluate "both the evidence favoring the claimant as well as the evidence favoring the claim's rejection"). This Court finds that the ALJ's interpretation of the evidence was consistent with the record as a whole and that the ALJ reasonably concluded that Dr. Hartman's opinions were inconsistent. As such, the ALJ was within his discretion to consider other factors, such as Smith's subsequent work history and the assessment of the State agency medical consultant, which the ALJ used to support his ultimate conclusion.

2. The ALJ's Determination That Smith Was Not Credible Was Supported by Substantial Evidence.

Smith additionally argues that the ALJ's credibility finding was not supported by substantial evidence because the ALJ's opinion was based primarily upon facts that were taken out of context. Because an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong. Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003). "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported...can the finding be reversed." Prochaska v. Barnhart, 454 F.3d 731,

8

738 (7th Cir. 2006) (citations omitted). An ALJ cannot simply state that an individual's allegations are not credible. Golembiewski, 322 F.3d at 915. Instead, Social Security Ruling 96-7p requires an ALJ to articulate specific reasons in a credibility finding. Id.; see also Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). While an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence," an ALJ may not select and discuss only that evidence that favors his ultimate conclusion." Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995). Instead, the ALJ must evaluate "both the evidence favoring the claimant as well as the evidence favoring the claim's rejection." Zurawski, 245 F.3d at 887.

The ALJ concluded that Smith's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not fully credible." (Tr. 19). To support this finding, the ALJ listed events in chronological order which indicated that Smith's impairment had been lessening, including: that Smith had received positive prognoses from two separate doctors; that Smith had improved his activity tolerance in physical therapy; that Smith had worked as a disc jockey and, on two separate occasions, as a framer at construction firms; and, that Smith had ceased receiving disability payments because he had resumed working. (Tr. at 18-19).

This Court finds that the ALJ provided sufficient reasoning to support his determination that Smith's claims regarding his inability to work were not entirely credible. To begin, the ALJ gave a thorough listing of Smith's medical history. (Tr. 15-17). In addition, the ALJ cited to numerous pieces of evidence that suggested improvement of Smith's condition. Id.

While it is true the ALJ did not address every piece of evidence in the record in support of his decision, an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence." See Rice, 384 F.3d at 370; Edwards, 985 F.2d at 338 ("[D]eterminations

9

of credibility often involve intangible and unarticulable elements which impress the ALJ, that, unfortunately leave no trace that can be discerned in [the] transcript."). An ALJ only needs to provide the analytical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. Having done so here, this Court finds the ALJ's credibility determination to be substantially supported.

3.   The ALJ's Determination That Smith Is Capable of Performing Past Relevant Work Is Based on Substantial Evidence.

   a.   Past Relevant Work

Smith additionally contends that the ALJ erred in finding that his work as a bartender was "past relevant work" because it was not of "sufficient duration." The SSA argues that, because the bartending work was within the fifteen year time period set out in 20 C.F.R. § 404.1560(b)(1), it can be reasonably classified as past relevant work. Social Security Ruling 82-62 defines "sufficient duration" as, "[time] for the worker to have learned the techniques, acquired information, and developed the facility needed for average performance in the job situation." Further, the SSR states that "[t]he length of time this would take depends in the nature and complexity of the work." Id.

Smith worked as a bartender for approximately fourteen months between October 1996 and December 1997, and also periodically in 1995 and 1996. (Tr. 99, 77). Based on the definition of "sufficient duration" in the SSR, this Court concludes that it was reasonable for the ALJ to have found that Smith's bartending work constituted past relevant work of sufficient duration. See Kimble v. Sullivan, 1990 WL 70842, *4-5 (N.D. Ill. 1990) (upholding as reasonable an ALJ's conclusion that working as a packer at a cosmetics factory, 5 days a week for 2 months, at $5.99/hr., was of sufficient duration).

   b.   Residual Functional Capacity

Smith also argues that there is no substantial evidence to support the ALJ's finding that Smith has the capacity to work as a carpenter/labor supervisor. Specifically, Smith claimed that his perceived inability to lift 100 pounds precluded a finding that he could perform such work. In response, the SSA contends that Smith could perform his past work as it was generally performed in the national economy. At the hearing, the ALJ stated that Smith had characterized the exertional requirements for his supervisory job as "very heavy." (Tr. 435). However, prior to the hearing, the Vocational Expert (VE) submitted a form document to the ALJ in which he described Smith's past supervisory and bartending work as "light" in exertional requirements, as defined by the Dictionary of Occupational Titles (DOT) and the SSA regulations. (Tr. 19, 167-68). The ALJ noted that the VE classified Smith's past jobs as "light" exertionally and noted that the VE's testimony was not in conflict with the definitions listed in the DOT. (Tr.19-20). Further, the VE testified that there were approximately 1,000 such jobs available in the region. (Tr. 20, 443). As such, the ALJ found that Smith possessed the RFC to work as a carpenter/labor supervisor or bartender. (Tr. 20). Having specifically noted the DOT definitions and the VE's testimony in his analysis, this Court concludes that the ALJ relied upon sufficient evidence to support his conclusion that Smith had the RFC to perform light exertional work.

  4. <u>The ALJ Considered the Combined Effects of Smith's Mental and Physical Impairments Adequately</u>.

Finally, Smith argues that the ALJ improperly failed to consider the combined impact of Smith's mental and physical impairments. The ALJ must consider the aggregate effect of a claimant's ailments. <u>See</u> <u>Green v. Apfel</u>, 204 F.3d 780, 782 (7th Cir. 2000). <u>see also</u> 42 U.S.C. § 423(d)(2)(B). In particular, Smith argues that his "mental health issues significantly affect his ability to function." Despite Smith's assertions to the contrary, this Court finds that the ALJ

adequately considered the aggregate effect of Smith's mental and physical impairments. In particular, the ALJ noted in his analysis that the assessment from Dr. Wilkey at the Riverwood Center indicated that Smith had "mild" to "no" difficulty with regard to functional limitations. (Tr. 17). Additionally, the ALJ cited to the fact that Smith worked in 2005 and 2006, and that he had been "functioning well" because of the "medication he was taking." (Tr. 16). Accordingly, this Court finds that the ALJ did not fail to consider the combined effects of Smith's mental and physical impairments.

### III.  CONCLUSION

For the aforementioned reasons, this Court concludes that the ALJ's findings were supported by substantial evidence. Therefore, Smith's motion for remand is **DENIED**. [Doc. No. 1]. This Court **AFFIRMS** the Commissioner's decision pursuant to sentence four (4) of 42 U.S.C. § 405(g). The clerk is instructed to term the case and enter judgment in favor of the SSA.

**SO ORDERED.**

Dated this 12th Day of December, 2008.

s/Christopher A Nuechterlein<br>Christopher A. Nuechterlein<br>United States Magistrate Judge